**Merilyn COOK, et al., Plaintiff,**

**v.**

**ROCKWELL INTERNATIONAL CORPORATION, a Delaware Corporation, and The Dow Chemical Company, a Delaware Corporation, Defendant.**

**Civ.A. No. 90–K–181.**

United States District Court,
D. Colorado.

Nov. 13, 1995.

Merrill G. Davidoff, Daniel Berger, Peter Nordberg, David F. Sorensen, and Jonathan Auerbach, Berger & Montague, P.C., Philadelphia, PA, and Bruce H. DeBoskey, Steven W. Kelley, Silver & DeBoskey, P.C., Denver, CO, for plaintiffs.

Richard C. Kaufman, Asst. U.S. Attorney, Denver, CO, and Carlotta Wells, United States Department of Justice, Washington, D.C., for Department of Energy.

### MEMORANDUM OPINION AND ORDER RE CONTEMPT

KANE, Senior District Judge.

The United States Department of Energy ("DOE") is the owner of the Rocky Flats nuclear weapons production facility located northwest of Denver, Colorado. DOE contracted with Defendants Dow Chemical Company and Rockwell International Corporation to operate Rocky Flats. Plaintiffs allege during operation of Rocky Flats, Dow and Rockwell released hazardous substances into the surrounding area damaging Plaintiffs' property and increasing their risk of adverse health consequences.

During the course of pretrial discovery in 1993, Plaintiffs served subpoenas duces tecum upon DOE requesting production of documents related to the Rocky Flats weapons plant. DOE did not file objections to the subpoenas, nor motions to quash or for protective orders.

In January 1994 Plaintiffs moved to compel compliance. In March 1994 Magistrate Judge Borchers ruled because DOE is not a party to the litigation, Plaintiffs exclusive remedy was to seek an order of contempt pursuant to Fed.R.Civ.P. 45. Plaintiffs therefore moved in April 1994 to hold DOE in contempt. On July 8, 1994, in order to resolve the contempt motion, DOE entered into a proposed Stipulated Order ("Order") which was made a court order by Magistrate Judge Borchers on September 13, 1994.

Plaintiffs move to hold DOE in contempt for alleged failure to produce documents pur-

suant to the Order. They also seek a cure of the alleged violations of the Order as well as an award of their attorney fees, costs, and expenses.

■ Failure to produce a pertinent document in a proceeding before a magistrate, after having been ordered to do so, constitutes a contempt of the district court for the district wherein the magistrate is sitting. 28 U.S.C. § 636(e). Under § 636(e), a magistrate does not have power to hold anyone in contempt and, therefore, must certify an act of contempt to a judge of the district court.

On May 30, 1995, Magistrate Judge Borchers certified the contempt motions to this court. In his certification, he stated he was satisfied DOE did not comply fully with the Order. Under § 636(e), I must hear the evidence and determine if there has been an act of contempt. I have heard the evidence and find DOE has violated the Order and is in contempt of this court.

### I. *Standards for Contempt.*

The Order provides:

Any deviation by DOE from compliance with any provision of this order shall constitute a basis for Contempt of Court within the meaning of Rule 45(e) Fed.R.Civ.P. and subject DOE to the entry, upon application, of a Citation of Civil Contempt and such additional sanctions as may be just.

(Order, ¶ 25 at 14.) Rule 45(e) states "[f]ailure by any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued."

■ A district court has broad discretion in using its contempt powers to require adherence to court orders and a review of a district court's finding of contempt is limited to determining whether the court abused its discretion. *O'Connor v. Midwest Pipe Fabrications, Inc.*, 972 F.2d 1204, 1209 (10th Cir.1992); *United States v. Riewe*, 676 F.2d 418, 420–21 (10th Cir.1982).

■ In civil contempt cases the proof of contempt must be clear and convincing. *Heinold Hog Market, Inc. v. McCoy*, 700 F.2d 611, 614 (10th Cir.1983); *United States v. Professional Air Traffic Controllers Organization, Local 504*, 703 F.2d 443, 445 (10th Cir.1983). To make a prima facie showing of

contempt, however, the party seeking a finding of contempt bears the burden of persuading the court of defendant's failure to comply, and need not prove ability to comply. *Heinold* at 615. The defendant then bears the burden of producing sufficient detailed evidence of inability to comply. *Id.* The party seeking a finding of contempt would then have the additional burden of persuading the court the defendant is able to comply. *Id.*

### II. *Merits.*

The Order requires DOE to provide unclassified documents within thirty days. (Order ¶ 21 at 13.) As to Plaintiffs' requests for classified documents, the Order requires DOE to make a written request for expedited classification review within seven days and promptly provide a copy of such request to Plaintiffs. (Order ¶ 20 at 12–13.) The Order further requires DOE to complete the review within thirty days or show good cause for an exception. *Id.*

#### 1. *Requests for Documents Relating to Missing Materials.*

■ Plaintiffs contend DOE violated the Order because it failed to provide documents, requested in December 1994, relating to missing quantities of nuclear materials at Rocky Flats.

In June 1994, DOE revealed to the public large quantities of plutonium and uranium were missing from Rocky Flats. Plaintiffs sent DOE a letter in December 1994 requesting documents pertaining to the missing substances and requesting any classified documents be reviewed and declassified pursuant to the Order. Plaintiffs have made repeated follow-up requests for the documents and/or evidence of the initiation of a classification review. DOE has failed to initiate a classification review or provide any writing, regardless of date, initiating such a review.

DOE contends it would be impossible or impracticable for its personnel to complete a classification review because it asserts such a review would entail 4000 personnel hours and expenditure of $100,000. In the more than seven months between the time of Plaintiffs' requests and the contempt hearing, however,

DOE has not even attempted to begin a classification review. Also, any alleged impossibility or impracticability existed at the time DOE voluntarily entered into the Order in July 1994 and DOE did not file a motion for protective order asking to be relieved of its obligations under the Order.

DOE violated ¶ 20 of the Stipulated Order by failing to make a written request for classification review; failing to provide a copy of any such writing to Plaintiffs; and failing to initiate a classification review of the requested documents. DOE has not provided the requested documents or filed objections to the request.

I find DOE has failed substantially to comply with the Order in this regard.

### 2. *Plaintiffs' November 7, 1994 Request.*

■ Plaintiffs contend DOE violated the Order because it failed to provide documents requested on November 7, 1994.

On November 7, 1994, Plaintiffs made a request for documents and posed a number of questions concerning indices provided by DOE. DOE did not respond. Plaintiffs sent a follow up letter on November 29, 1994. Some requested documents were produced but others were withheld.

On March 3, 1995, Plaintiffs wrote DOE and stated they were prepared to send document reviewers immediately to inspect the documents requested on November 7, 1994. In April, 1995 Plaintiffs filed these motions to hold DOE in contempt. On May 17, 1995, DOE informed Plaintiffs some of the requested documents were ready for inspection. On May 26, 1995, DOE informed Plaintiffs some documents could not be produced and failed to identify which documents could not be produced or state the reasons therefor. Plaintiffs have repeatedly asked for an identification of the documents withheld and the reasons for the nonproduction. To date, DOE has not responded with this information.

DOE does not claim it has begun a classification review. DOE failed to produce requested unclassified documents within thirty days of the request; failed to initiate a classification review of classified documents in writing within seven days of the request; and failed to complete its classification review within thirty days or show good cause why it could not do so. I find DOE has failed substantially to comply with the Order in this regard.

### 3. *Plaintiffs' November 23, 1994 Request.*

■ Plaintiffs contend DOE violated the Order because it failed to provide documents requested on November 23, 1994.

On November 23, 1994 Plaintiffs submitted a list of ninety-eight documents to be produced. DOE has not provided Plaintiffs with a written request for expedited classification review.

DOE asserts it was impossible to provide Plaintiffs with a request for expedited classification review within seven days because Plaintiffs' document list was not from a DOE index but, rather, from an index provided by a consultant to the Colorado Department of Health; DOE did not know within seven days whether any of the documents were classified; and, many of the documents were improperly identified and could not be found because the titles, names and dates did not match those at Rocky Flats.

While it may have been "impossible" to provide a written request for classification review within seven days, DOE does not explain why it has not yet produced such a writing. DOE seems to be contending if it cannot comply with the specific deadlines provided in the Order it may disregard the Order altogether. This argument is hardly persuasive.

DOE has not completed the classification review within thirty days of the Order and asserts it was impossible to do so. On December 15, 1994, Plaintiffs received unclassified and declassified documents and a status report indicating many documents could not be located. At a January 5, 1995 meeting, Plaintiffs were given another update and agreed that, as other classified documents were located, they would send a representative to Rocky Flats to determine which documents Plaintiffs wished declassified. On February 9, 1995, Plaintiffs were given a third update which informed Plaintiffs that

twenty six documents could not be located, seven additional documents were enclosed, and eleven documents required a radiological survey. Plaintiffs received status reports on May 2 and May 5, 1995 indicating thirteen documents could not be located.

While the parties may have agreed to a different procedure for reviewing and declassifying documents, a majority of the requested documents have not been produced and DOE has declassified only five of fifty-seven classified documents requested in November 1994. Again DOE seems to be contending if it cannot comply with the specific deadlines provided in the Order it may disregard the Order altogether. I find DOE has failed substantially to comply with the Order in this regard.

### 4. *Documents Requested from EML.*

■ Plaintiffs contend DOE violated the Order because it failed to provide unclassified documents located at the Environmental Measurements Laboratory in New York City ("EML") within thirty days.

EML conducted a number of Rocky Flats studies. Plaintiffs deposed the EML custodian of records on January 23, 1995. The deposition revealed that discoverable material had not been produced and several document collections may not have been thoroughly searched. During the deposition, DOE agreed to produce a number of additional documents and provide certain information. Plaintiffs sent DOE letters on February 2, 1995 and March 1, 1995 again requesting the documents. In its response to Plaintiffs' motion to hold DOE in contempt, DOE asserted the requested documents would soon be available. DOE produced the documents four months after the request.

DOE asserts it substantially complied with the Order. In this regard, Plaintiffs have not established DOE has failed substantially to comply with the Order.

### 5. *Failure to Identify Computer Tapes.*

■ Plaintiffs contend DOE violated the Order by failing to identify computer tapes containing Rocky Flats related documents.

The Order required DOE to identify all Rocky Flats related documents not previously identified by DOE or known to Plaintiffs by July 31, 1994, (Order ¶ 3), and to use its best efforts to identify and locate all Rocky Flats-related documents and document collections, (Order ¶ 21).

In March 1995 EG & G disclosed to Plaintiffs the existence of 257 computer tapes, located at the plant for at least six years, containing millions of pages of documents potentially responsive to Plaintiffs' subpoenas. The tapes are owned by DOE and in the custody of EG & G, the DOE management and operating contractor at Rocky Flats.

Plaintiffs assert these tapes have been at the plant for years; ninety are duplicates of tapes seized by the FBI in 1989 during the criminal proceedings against Rockwell; and, thus, DOE was required to inform Plaintiffs of them by July 31, 1994.

The manager of EG & G's Record Department testified she was aware of the tapes since June 1989 and had been reminded of their existence at various times since 1989. She asserts, however, she forgot about the tapes until she was reminded about them in January or February of 1995. According to the manager, until that date she had not connected the tapes of which she had previous knowledge with discovery requests.

I find DOE, in failing to identify the computer tapes, has not complied substantially with the Order.

### 6. *Delayed Processing of Security Clearances.*

Plaintiffs contend DOE violated the Order by failing to process Plaintiffs' two security clearance applications in a timely manner.

The Order provides DOE shall furnish Plaintiffs with sufficient clearances to permit Plaintiffs to review unclassified documents. (Order ¶ 1(d).)

Plaintiffs submitted two applications for expedited clearances on December 6, 1994. It takes an average of forty-five days for an application to be processed. Required testing could not be performed, however, until the applications were forwarded by DOE's

general counsel to the DOE security office. They were not forwarded for two months with no explanation for the delay. The applicants received their clearances in March 1995.

DOE asserts by order dated February 9, 1995, Magistrate Judge Borchers, in denying Plaintiffs' motion for an order requiring DOE to process additional security clearances, ruled that access to classified documents was not covered by the Order; the magistrate judge also determined DOE had not unreasonably delayed processing Plaintiffs' security clearance requests and I affirmed that ruling. Thus, the court has already addressed the security clearance issue and it is not considered with the instant motion for contempt.

### 7. *Documents in the Custody of Los Alamos National Laboratory.*

In a separate motion, Plaintiffs contend DOE violated the Order because it failed to provide documents in the custody of Los Alamos National Laboratory ("LANL"), a facility owned by DOE and operated by the Regents of the University of California on behalf of DOE. DOE owns and/or controls all requested documents in LANL's custody.

Plaintiffs, by letter dated December 14, 1994, requested documents at LANL relating to health assessments and epidemiological studies which focused on human health effects of plutonium exposure. Plaintiffs assert after the 1969 fire at Rocky Flats, DOE augmented efforts at Los Alamos to determine the health effects of plutonium exposure. As a result, LANL undertook a study of workers exposed to plutonium which included workers exposed during the Manhattan Project. In 1976 LANL undertook the "Plutonium Workers Study", an epidemiological study of all workers in the DOE weapons system exposed to plutonium, including an analysis of 5,400 Rocky Flats workers. There was also a study of plutonium exposures through wounds, which included Rocky Flats workers, and a study of plutonium concentration in human tissue.

In February 1995, after receiving no response, Plaintiffs telephoned LANL's counsel who stated he had lost Plaintiffs' letter.

Plaintiffs immediately faxed and mailed copies to him. In March 1995 LANL produced publicly available published articles relating to the studies. Plaintiffs have received no further documents in response to their requests.

DOE asserts requested documents pertaining to facilities other than Rocky Flats are not relevant and, therefore, have refused to produce such documents. Magistrate Judge Borchers, in overruling Defendants' objections to the Order, specifically held production of documents pursuant to the Order should not be precluded or delayed by virtue of relevance disputes. DOE did not file a motion for protective order or otherwise seek judicial relief from the requests.

With regard to documents pertaining to the Rocky Flats facilities, DOE asserts it understood Plaintiffs did not seek actual production of the documents but, rather, sought only to be permitted to inspect the documents at LANL. It further asserts these documents have been available since August 1994 and the only reason these documents have not been produced is Plaintiffs' failure to ask to inspect the documents. I find this assertion incredible.

I find DOE, by not producing the requested documents within thirty days, or at any time thereafter, has failed substantially to comply with the Order.

### 8. *Documents located in Germantown, Maryland.*

Before the Order was signed by DOE in July, 1994 Plaintiffs requested classified documents located in Germantown.

With respect to any document over which federal agencies other than DOE must consent to release, the Order provides DOE shall make a written request, within seven days, to such agency to expedite the classification review of the document. (Order ¶ 20 at 12–13.)

By letter dated September 20, 1994, within seven days of the entry of the Order as a court order, DOE's counsel informed Plaintiffs classified documents had been sent to

various federal agencies for classification review.

Plaintiffs contend a letter from DOE's counsel did not constitute written proof DOE had requested the agencies to initiate a classification review. I find, however, DOE complied substantially with the Order.

### 9. *Rocky Flats Database.*

■ By letter dated November 8, 1994, Plaintiffs requested production of a Rocky Flats database in the custody of LANL. On December 1, 1994, DOE informed Plaintiffs it was asking Defendants' attorneys whether they had objections based on privilege. DOE asserts it has not received a response from Defendants and, therefore, has not produced the documents.

On July 22, 1994, Defendants filed objections to the entry of the Order on grounds of relevance, privilege and time limitations. Following a hearing on August 15, 1994, Magistrate Judge Borchers overruled all of Defendants' objections; found Plaintiffs had made valid and legitimate requests for documents but Defendants had fought to preclude access to the documents; and, held relevance objections were to be resolved at a later time before trial. Paragraph 19 of the Order expressly prohibits delay for privilege review and provides neither DOE nor defendants waive any right to assert privilege by producing documents pursuant to the Order.

DOE asserts the Order applies only to privileges asserted by DOE and it cannot waive any privilege of the Defendants. This assertion is entirely fatuous. Plaintiffs contend the Order applies to all documents under DOE's control.

I agree with Plaintiffs and find DOE has failed substantially to comply with the Order.

### 10. *OU–3 Documents.*

Plaintiffs contend DOE violated the Order by taking eight months to produce documents relating to off-site areas. The documents were requested in December 1994 and produced on August 8, 1995. I find there has been substantial compliance with the Order in this regard.

### 11. *Pre–Production Relevance and Classification Reviews.*

Plaintiffs contend DOE violated the Order because the attorney principally responsible for its compliance with the Order testified DOE conducted pre-production relevance reviews and unclassified documents underwent a classification review before production. The Order prohibits pre-production relevance reviews but is silent as to classification reviews of unclassified documents.

I make no finding here regarding the issue of substantial compliance with the Order. However, I caution DOE to comply with the Order in its prohibition of pre-production relevance reviews.

### III. *Relief.*

■ Determination of the correct sanction for a discovery violation is a fact-specific inquiry the district court is best qualified to make. *Ehrenhaus v. Reynolds,* 965 F.2d 916, 920 (10th Cir.1992).

■ The sanction of civil contempt serves two remedial purposes: (1) to enforce compliance with an order of the court, and (2) to compensate for losses caused by the noncompliance. *O'Connor v. Midwest Pipe Fabrications, Inc.,* 972 F.2d 1204, 1211 (10th Cir. 1992). The remedial aspects outweigh the punitive considerations and, thus, the primary beneficiaries of such an order are the individual litigants. *Ager v. Jane C. Stormont Hosp. & Training School for Nurses,* 622 F.2d 496, 500 (10th Cir.1980).

■ Where the purpose of the sanction is coercive, the court must consider the character and magnitude of the harm threatened by continued contumacy, and the probable effectiveness of any suggested sanction in bringing about the result desired. *O'Connor v. Midwest Pipe Fabrications, Inc.,* 972 F.2d 1204, 1211 (10th Cir.1992). A court must exercise the least possible power adequate to the end proposed. *Id.* To be consistent with these principles, coercive civil sanctions may only continue until terminated by compliance. *Id.; Professional Air Traffic Controllers,* 703 F.2d at 445.

■ On the other hand, if a fine is imposed for compensatory purposes, the

amount of the fine must be based upon the complainant's actual losses sustained as a result of the contumacy. *O'Connor v. Midwest Pipe Fabrications, Inc.*, 972 F.2d 1204, 1211 (10th Cir.1992). Moreover, in the absence of evidence showing the amount of the loss, any sum awarded by the court is speculative and therefore arbitrary. *Id.* The court must have some basis for determining not only the amount, but the reasonableness of costs claimed. *Allied Materials Corp. v. Superior Products Co.*, 620 F.2d 224, 227 (10th Cir.1980).

### IV. *Conclusion.*

DOE's assertion that it is unable to comply with the Order is untenable. DOE voluntarily agreed to the Order, with full knowledge of the documents in its possession and the terms of the Order, to resolve Plaintiffs' prior contempt motion against it. Relying upon DOE's agreement to the Order, the court did not adjudicate Plaintiffs' prior contempt motion. DOE did not object when the Order was entered it lacked the ability to comply with its terms, nor did DOE file any motion for protective order.

For reasons stated above, I find DOE has failed substantially to comply with the Order in the several respects delineated above.

IT IS ORDERED THAT:

1. DOE shall pay Plaintiffs their reasonable attorney fees, costs, and expenses for all their efforts to secure production of documents in DOE's control from July 8, 1994 (the date DOE agreed to entry of the Order) through the date of this order, including all fees, costs, and expenses incurred in Plaintiffs' prosecution of their motions for contempt. On or before December 14, 1995, Plaintiffs shall submit their request for attorney fees, costs, and expenses, with supporting documentation for those matters only for which I have found DOE in contempt. DOE may file objections to the request on or before January 2, 1996. If objections are filed, the cause will be set for evidentiary hearing and additional costs incident to that hearing may be imposed as well.

2. DOE shall comply with the Order in all respects. and in particular with regard to Plaintiffs' requests for documents relating to missing materials, Plaintiffs' November 7, 1994 request, Plaintiffs' November 23, 1994 request, the identification of computer tapes, documents located at LANL, and the Rocky Flats database, as discussed above. DOE shall comply with the time framework provided in the Order as if all Plaintiffs' requests had been made on the date of the filing of this order. DOE shall bear all costs and expenses associated with its compliance with this order and the Stipulated Order.

3. The parties shall within forty-five days of the filing of this order file a status report regarding compliance with this Order. I defer any further order on issues of contempt or sanctions until I have reviewed such status report.